## ALTHOUSE BROWN MOTOR CO v WILCOX

Ohio Appeals, 7th Dist, Mahoning Co

Decided April 15, 1935

Barnum, Hammon, Stephens & Hoyt, Youngstown, for plaintiff in error.

John Ruffalo, Youngstown, for defendant in error.

## OPINION

By CARTER, J.

The issues having been thus joined, the cause came on for trial to the court and jury, and a verdict was returned in favor of the plaintiff for $20,000. Motion for new trial was filed, overruled and judgment rendered on the verdict, and from this verdict and judgment error is prosecuted to this court. The chief errors relied upon, as set out in brief of plaintiff in error, are:

First: Misconduct on the part of counsel for plaintiff below in making certain inquiries of prospective jurors relating to liability insurance.

Second: That the verdict of the jury is against the manifest weight of the evidence and contrary to law.

Third: That the court erred in overruling defendant's motion at the close of plaintiff's case and at the close of all the evidence to direct the jury to return a verdict for the defendant.

Fourth: That the verdict is excessive.

Fifth: Passion and prejudice, denying defendant a fair and impartial trial.

Sixth: Error in the trial court permitting incompetent and prejudicial evidence to be offered on behalf of plaintiff.

Seventh: Error in the general charge of the court.

Eighth: That the trial court failed to properly charge the jury.

Ninth: That the court erred in overruling defendant's motion for a new trial.

These claimed errors will be taken up in the order in which they are above enumerated. The facts, stated briefly, are as follows: On the 20th day of February, 1933, Leroy Wilcox resided with his wife at Damascus, Ohio; that shortly after his death a child was born as a result of such marriage; that about four miles from Salem, on the Salem-Garfield Road, and on the left hand side thereof, when traveling toward Garfield, this being the south side of the road, was the home of decedent's father, who was living thereat; that about six-thirty o'clock in the evening of the 20th day of February, plaintiff's decedent left the home of his father, where he had been for a short visit, and had with him at the time a quart bottle of milk, which he had obtained from the Stanley home, this being a home near the father's residence; that the home of the deceased was west of the father's home, and south; that later on in the evening, after the visit of the son to the father's home, and on the south side of the road, in the ditch, was found the body of the decedent. An automobile was in the field a considerable distance from the road, and about one hundred feet or so west of where the body was found; that about ten or eleven o'clock that evening, Ray Pearce, funeral director, went to the scene of the accident, rescuing the body of the decedent; that the body was lying about twelve or fifteen feet south of the southerly line

of the road; that the body was on its back and the head to the east; that he was still alive at the time and died twenty-four hours later; that Paddy Hayden, a deputy sheriff, went to the scene of the accident and found a glass on the highway; that he went to the Wilkinson home and took him to Salem, where he was locked up in jail; that during the day on which this occurred. Wilkinson was performing services on behalf of the defendant company; that after this accident occurred, Mr. Althouse, of the defendant company, was called by Mrs. Wilkinson; that he came to the Wilkinson home, and from there they proceeded to the scene of the accident, located the car and found the body lying in the ditch; that later Wilkinson was indicted for manslaughter, pled guilty and was placed on probation.

Now, as to the claimed error on the part of counsel for plaintiff in making inquiries of prospective jurors relative to their possible connection with any liability insurance company, the inquiries were as follows:

'Do any of you, as a side line, solicit insurance, automobile liability insurance for any insurance company? Have any of you ever worked as a solicitor for insurance or solicited insurance for automobiles, accidents and so on? Do any of you own any stock in any automobile insurance company, or do you have any relatives that are employed as agent or solicitors or in any capacity for any insurance company?"

Thereupon Mr. Stephens, counsel for defendant, stated:

"Defendant objects and excepts to that line of question."

It will be observed by an examination of the record that no ruling was made by the court on this objection and exception to this line of questioning. It was stated in argument that no audible objection was made to the court, but that counsel for defendant nodded his head to the stenographer to enter this objection and exception. This was denied by defendant at the time of the hearing in this court. However, we can give no consideration to these statements, as such are not a part of the record before us, and in the absence of the record showing anything to the contrary, we must assume that the objection and exception was directed to the court. Were these inquiries misconduct on the part of counsel for the plaintiff? At the time of the trial of this case, such inquiries were proper. See **Pavilonis v Valentine, 120 Oh St, 154.**

Shortly after the trial of this case, but prior to the overruling of the motion of the defendant for a new trial, such inquiries were held by the Supreme Court of the state to be improper. See **Vega, Admrx. v Evans, 128 Oh St, 535.** The court in that case held that inquiry of prospective jurors relating to their connection with liability insurance companies was not only error, but prejudicial error.

Now, it is claimed that the record does not indicate that the court ruled upon defendant's objection to this line of questioning, and therefore that error could not be predicated thereon; that before error may be predicated upon an objection, the court must rule thereon and exceptions taken. This court has spent considerable time on this important phase of the case, have examined the cases cited by counsel for plaintiff and defendant, and many others, and find that the courts of this state have held in some instances that objection must be made at the time, a ruling of the court thereon and exception saved, in order to predicate error thereon. However, in the case of **Hayes v Smith, 62 Oh St, 161,** which case is quoted with approval in **124 Oh St, 8,** the court holds:

"It is a duty of the trial court which is not merely discretionary, when counsel grossly abuses his privilege to the manifest prejudice of the opposite party, to interpose and admonish the offending counsel, and to instruct the jury in regard thereto, and if it failed to do it, it is ground for a new trial. The form in which an objection to such an abuse of privilege is brought to the notice of the trial court is not material, and when the record shows opposing counsel addressed his objection and exception directly to the court, and the full record being before the reviewing court, it does not appear that the trial court took any notice thereof, nor that it acted thereon, it will be presumed to have refused to rule out the objectionable matter, and such failure and refusal would be ground for reversal."

In **Thatcher v Penn-Ohio & Det. R. D. Co,. 33 Oh Ap 242,** the third paragraph of the syllabi is as follows:

"Arguments of counsel should be confined to question in issue, and evidence received relating thereto, and if misconduct of counsel in argument improperly influences the jury, even though objection is not made or exception taken thereto, trial court should grant a new trial."

An examination of the transcript and journal entries shows that the trial of this case began on May 20th, 1934; that on the 11th day of May, 1934, the verdict of the jury was returned; that on May 14th, 1934, a motion for new trial was filed, and on October 3rd, 1934, the motion for a new trial was overruled and judgment entered on the verdict. The Vega case, supra, was decided on June 20th, 1934, so that it is clear that at the time the motion of defendant for a new trial was overruled, the new ruling of the Supreme Court was in effect. The court refused to grant a new trial, and we must assume that the court had knowledge of the holding of the Supreme Court in the 128 Oh St case, supra. The court in the Vega case held that such inquiries were not only error but prejudicial error, and granted a new trial in that case.

The majority of this court has come to the conclusion that these inquiries were improper and that the same constituted prejudicial error.

Now, as to the second and third grounds of error, that the verdict of the jury is against the manifest weight of the evidence and contrary to law, and that the court erred in overruling defendant's motion at the close of plaintiff's case and at the close of all the evidence to direct the jury to return a verdict for the defendant, this entire record has been read, and in the light of the evidence introduced in this case we are satisfied that questions of fact were presented for determination by the jury. From the statements made by Mr. Althouse, of the defendant company, to one of the officers; the statements made by the driver of the automobile shortly after the occurrence, his entering a plea of guilty to manslaughter, and all the surrounding circumstances, we can not say that the court should have directed a verdict in favor of the defendant either at the conclusion of the plaintiff's testimony or at the conclusion of all the testimony, or that the finding of the jury was manifestly against the weight of the evidence.

As to the claim that the verdict of the jury, and judgment entered thereon, is excessive, inasmuch as this case will be again tried, there is no necessity of passing upon this ground of error.

The same observation may be made as to the fifth ground of error, "that the jury were under the influence of passion and prejudice, denying defendant a fair and impartial trial."

It is claimed by the plaintiff in error that the trial court erred in permitting incompetent and prejudicial evidence to be offered on behalf of the plaintiff below, over the objection and exception of defendant. We have examined this record with this claim in view, and it is to be observed that in most instances the court sustained the objections. However, there were some questions propounded wherein the objection was overruled, or where the court failed to pass thereon, but we do not find such to have been prejudicial.

Seventh, that the trial court erred in its general charge to the jury, and that he failed to properly charge the jury, thus denying defendant a fair trial. We have examined the charge of the court and find no prejudicial error therein. If there were matters of omission, they should have been brought to the court's attention in order that the same might have been corrected or his charge augmented.

Ninth, that the trial court erred in overruling the defendant's motion for a new trial. As heretofore stated in this opinion, it is the view of the majority of the court that for reasons herein set forth the court erred in refusing to grant the defendant a new trial.

Judgment reversed and remanded for new trial.

ROBERTS, J, concurs.
NICHOLS, J, dissents.

### DISSENTING OPINION

By NICHOLS, J.

I agree with the majority members of this court in finding that the record fails to disclose prejudicial error in the respects set forth in the grounds of error designated as Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth and Ninth in the petition in error.

I cannot concur in the reversal of the judgment of the Common Pleas Court for the error claimed in the first ground set forth in the petition in error, to-wit:

"Misconduct on the part of counsel for plaintiff below in making certain inquiries of prospective jurors relating to liability insurance."

An examination of the record discloses that counsel for plaintiff made the following inquiries of the prospective jurors on voir dire examination:

"Do any of you, as a sideline, solicit insurance, automobile liability insurance, for any insurance company? Have any of you ever worked as a solicitor for insurance,

or solicit insurance for automobiles? Accidents, and so on. Do any of you own any stock in any automobile insurance company? Or do you have any relatives that are employed as agent, or solicitor, or in any capacity, for any insurance company?

MR. STEPHENS: Defendant objects and excepts to that line of questioning."

There is nothing in the record showing any action by the court upon this objection, the record next setting forth the opening statement of counsel for plaintiff. It is conceded that at the time of the trial such inquiries were proper. Pavilonis v Valentine, 120 Oh St, 154. This being so, there can be no ground for the claim that there was misconduct on the part of counsel or the court relative to the making of such inquiries or the failure of the court to act upon the objection thereto by counsel for defendant. There certainly was no duty of the trial court "to interpose and admonish the offending counsel, and to instruct the jury in regard thereto" as counsel could not "offend" in doing that which the established law of the state then sanctioned and approved. Herein is the clear distinction between the case at bar and the case of Hayes v Smith, 62 Oh St 161, (cited and quoted with approval in 124 Oh St 8), relied upon and quoted from the majority opinion of this court. For like reason, the case of Thatcher v Pennsylvania-Ohio & Detroit Rd. Co., 33 Oh Ap, 242, is not in point.

The majority opinion of this court seems to be founded on the case of Vega, Admr. v Evans, 128 Oh St, 535.

The case at bar is, in my opinion, clearly distinguishable from the case of Vega, Admr. v Evans. In the first place, the defendant, Evans, in the case reported in 128 Oh St was an individual and in the instant case the defendant was a corporation engaged in the general sale and service of automobiles. In this day and age there is no person who has sufficient qualifications to serve as a juror who does not know that in the vast majority of instances such automobile sales and service companies carry liability insurance and the inquiry of counsel upon the voir dire informed the jury of nothing of which they were not already informed, and there could be no prejudice to the defendant below. And it might be observed on this point that it reasonably appeared in this case that a liability insurance company was actively interested in the defense. It is stated in the opinion of the court in Vega, Admr. v Evans, Supra, at page 540, approving the dissenting opinion in **Pavilonis v Valentine, 120 Oh St, 154,** that if "it was patent to the jurors that an insurance company was an indemnitor and actively interested in the trial, then no prejudice could have resulted from questioning the jurors on their voir dire as to interest in such company." On the other hand, if it were patent to the jury that an insurance company was actively interested in the trial, it would certainly have been prejudicial to the plaintiff below if he be required to accept jurors without any opportunity to ascertain the interest, if any, of the prospective jurors in such liability insurance business. In the state of Ohio there is more than one liability insurance company in which a vast number of persons are interested as stockholders and salesmen, and where the policy holders are assessed to pay claims, making all such policy holders directly interested in keeping such companies from paying claims.

In my own county of Belmont I know this to be true, and in a long and extensive practice I have felt that I would be derelict in my obligation to my client if I did not make reasonable effort to ascertain the interest of the prospective jurors in such liability insurance company or association. It has been the universal practice to elicit such information by inquiries such as were made upon the voir dire in this case. In the case at bar I am well satisfied that substantial justice has been done, and I cannot subscribe to any finding in this case which would extend the stringent rule laid down in the 3rd syllabus of Vega, Admr. v Evans, supra, where the circumstances and facts of the case are clearly distinguishable. The case of Vega, Admr. v Evans, is further distinguished from the case at bar in that in the Vega case an objection was timely made to the inquiries propounded on the voir dire, **the objection was overruled by the court,** and an exception taken to the **ruling of the court.** Not so in the instant case. Here counsel for defendant made no objection to the questions involved when first propounded, but waited until the entire line of questioning had ended, at which time the record shows the following:

"Mr. Stephens: Defendant objects and excepts to that **line** of questioning."

The record does not show that the court passed upon this objection, and the language used by counsel strongly intimates that the objection and exception were read into the record without calling the same to the attention of the court. It was the duty

of counsel for the defendant, timely, that is, immediately upon the beginning of the "line" of questions to interpose his objection to the court and insist upon a ruling by the court, and if the court should overrule the objection, to note his exception to such overruling. No challenge to the array of the jury was made. For all we know, if the court's attention had been called timely to the questions claimed to be objectionable, the array might have been set aside and a new jury called and the expense involved in the further trial avoided. It will be kept in mind that "misconduct" of the court and counsel for plaintiff could not result from conduct expressly authorized and approved by the established law of the state.

In the opinion of the minority member of this court the holding in the case of **Warder, B. & G. Co. v Jacobs, 58 Oh St, 81,** establishes the correct rule applicable to the situation in the case at bar, from which is quoted:

"From the record before us it simply appears that these observations were made by counsel for the plaintiff to the jury, and that counsel for the defendants then and there 'objected and excepted.' From this we readily infer that counsel 'objected' to the remarks of the opposing counsel, as he had an undoubted right to do. But to what did he 'except?' An exception is not to the act of a party but to that of a court in ruling on an objection. What the court did in this matter is not disclosed by the record."

Reference to the General Code of Ohio is made:

"Sec 1159 GC. What an exception is: An exception is an objection taken to a decision of the court upon a matter of law."

"Sec 11560 GC. When to be taken, reduced to writing. The party objecting to the decision must except at the time it is made * * *."

In consideration of the whole record, the minority member of this court could not certify that substantial justice has not been done in this case, or find that error prejudicial to the rights of the defendant below has intervened, and it is the opinion of the minority member of this court that the judgment of the Common Pleas Court should be affirmed.